# EXHIBIT C

Filed: 7/11/2019 2:32 PM
Lynne Finley
District Clerk
Collin County, Texas
By Migdalia Martinez Deputy
Envelope ID: 35054560

CAUSE NO. **199-03690-2019**

| | | |
|---|---|---|
| TYRONE TURNER | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | ____th DISTRICT COURT |
| | § | |
| ALLSTATE FIRE AND CASUALTY | § | |
| INSURANCE COMPANY and MARSH | § | |
| CLARK | § | |
| Defendants. | § | COLLIN COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **TYRONE TURNER**, Plaintiff, and files this, his Original Petition and Request for Disclosures against Defendants, **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY** and **MARSH CLARK** and for cause of action would respectfully show as follows:

### DISCOVERY CONTROL PLAN LEVEL

1. Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, Plaintiff designates this case to proceed under a Level 3 Discovery Control Plan.

### PARTIES AND SERVICE

2. Plaintiff, **TYRONE TURNER**, is an individual residing in Collin County, Texas.

3. Defendant, **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY**, is an insurance company engaging in the business of insurance in the State of Texas and may be served with process by certified mail by serving its Attorney for Service, CT Corporation System at the following address: 1999 Bryan Street, #900, Dallas, Texas 75201.

4. Defendant **MARSH CLARK** is an individual engaging in the business of insurance in the State of Texas and may be served with process by certified mail at the following address: P.O. Box 672041, Dallas, TX 75267.

## JURISDICTION AND VENUE

5. This court has jurisdiction over this case because the amount in controversy is within the jurisdictional limits of the Court.

6. Plaintiff is seeking monetary relief over $200,000 but not more than $1,000,000.

7. This court has jurisdiction over Defendant Allstate because it is an insurance company domiciled in the State of Texas.

8. This court has jurisdiction over Defendant Clark because she is an individual domiciled in the State of Texas.

9. Venue in Collin County, Texas is proper in this case because the insured property is situated in Collin County, Texas.

## FACTS

10. This case is about the unfair, deceptive, and bad-faith denial of covered homeowners' insurance benefits and a breach of the insurer's duty of good faith and fair dealing and numerous violations of the Texas Insurance Code.

11. Allstate systematically denies hail damage claims at the initial valuation stage and offers a low amount knowing that the initial valuations are inaccurate, unreliable, and biased toward generating estimates far below the actual cash value or replacement cost and anticipating that claimants will not bother disputing the low offer.

12. Plaintiff is the named insured in Allstate Policy No. 000916247879 hereinafter referred to as "the Policy." The policy is a replacement cost policy.

13. Under a replacement cost policy, the liability limits of the policy and the premium paid by the insured are determined on the basis of the replacement cost of the structure. The value of contractor's overhead and profit, as well as sales tax on building materials, has been included in the limit of liability for which the insured has paid premium.

14. Allstate marketed, promoted and advertised its products or services with no intent to sell them as advertised. During the underwriting of the risk and binding of Plaintiff's coverage Allstate failed to disclose that it systematically excludes prospective contractor's overhead and profit in the event of a claim. Failing to disclose this material information caused Plaintiff to enter into a transition he otherwise would not have entered into.

15. In April of 2017 a severe hail and windstorm tore through the City of Frisco. Plaintiff's home was in the path of the storm. Thereafter, Plaintiff reported the claim to Allstate. Allstate dispatched an adjuster to investigate Plaintiff's claim. However, Allstate's adjuster closed the claim absent conducting a reasonable investigation into all the covered damages to the property which constitutes an unfair or deceptive settlement practice with respect to an insurance claim.

16. A first-party property claims adjuster is really the only advocate that the homeowner has after a loss. The property claims adjuster is employed by the insurance company to investigate and pay claims. There is an inherent conflict of interest between the claimant and the adjuster because the adjuster owes fidelity to the homeowner to objectively investigate and pay claims, but this same adjuster is paid by an insurance company that seeks to maximize profits by minimizing losses.

17. It's critically important for the claims adjuster to read the insurance policy, know the coverages, be a great investigator and communicator, take his time, pay attention to detail, and know how to estimate the costs of any repairs. Those are critical elements in any first-party property claims adjustment.

18. Here, the adjusters assigned to Plaintiff's claim were placed in a position to help Plaintiff in a time of distress after a devastating storm and it was critically important that they take enough time to properly do their jobs and analyze all the damage to Plaintiff's property. Instead, the

adjusters handled the claim in a manner calculated to construct a pretextual basis for denial or underpayment of Plaintiff's claim. For example, Clark denied Plaintiff's claim for roof starter, ridge, OSHA safety equipment and prospective general contractors' overhead and profit absent a reasonable investigation.

19. To be sure, "the deduction of prospective contractors' overhead and profit and sales tax in determining the actual cash value under a replacement cost policy is improper, is not a reasonable interpretation of the policy language, and is unfair to insureds."[1]

20. Clark told Plaintiff that his policy does not cover contractors' overhead and profit for roofing. Clark intentionally misrepresented the terms of the policy in order to underpay Plaintiff's claim anticipating that Plaintiff would not bother disputing the "lowball" offer.

21. Allstate failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim after Allstate's liability became reasonably clear. A reasonable objective investigation would have revealed the extensive damage and Plaintiff would have been fully compensated under the terms of the Policy.

22. Together, Defendants set about to deny or underpay a properly covered loss to Plaintiff's detriment.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

23. Plaintiff incorporates herein by reference paragraphs 1 through 22.

24. An insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed.

25. An insurance policy, however, is a unique type of contract because an insurer generally has exclusive control over the evaluation, processing, and denial of claims, and it can easily use

---

[1] *See* TDI Bulletin No. B-0045-98 available online at the Department's website:
http://www.tdi.state.tx.us/bulletins/1998/b-0045-8.html.

Plaintiff's Original Petition - Page 4 of 11

that control to take advantage of its insured. Because of this inherent "unequal bargaining power," the Texas Supreme Court concluded that the "special relationship" between an insurer and insured justifies the imposition of a common-law duty on insurers to "deal fairly and in good faith with their insureds."[2]

26. Under the terms of Plaintiff's homeowners insurance policy, Allstate agreed to pay the cost to repair, rebuild or replace Plaintiff's property in the event it was damaged by hail or windstorm in exchange for Plaintiff paying his premium. If Plaintiff never repairs or replaces the damaged or destroyed property, payment will be on an actual cash value basis. This means replacement cost less applicable depreciation.

27. To be sure, the policy does not say Allstate may pay the amount it *actually* costs to repair or replace the damaged or destroyed property. In fact, the policy requires Allstate to pay replacement cost in excess of the actual cash value only if Plaintiff repairs or replaces the damaged property. If Plaintiff never repairs or replaces the damaged or destroyed property he's still entitled to actual cash value of the damaged property.

28. Indemnity is the foundation of an insurance policy. The objective is that the insured should neither reap economic gain nor incur a loss if adequately insured. This objective requires that the insured receive a payment equal to that of the covered loss so that the insured will be restored to the same position after the loss as before the loss.

29. The calculation of actual cash value will result in an under-payment if the insurer fails to include all damaged property or deducts prospective contractors' overhead and profit and sales tax in determining the actual cash value in a replacement cost policy. Generally, the objectives of indemnity will be met if actual cash value is calculated as replacement cost with proper deduction for depreciation.

---

[2] *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018).

30. There is no situation in which the deduction from replacement cost of general contractors' overhead and profit and/or sales tax on materials will be the correct measure of actual cash value. Under a replacement cost policy, the liability limits of the policy and the premium paid by Plaintiff are determined on the basis of the replacement cost of the structure. The value of contractor's overhead and profit, as well as sales tax on building materials, has been included in the limit of liability for which Plaintiff paid for in exchange for insurance coverage.

31. When Allstate, in determining actual cash value, excluded costs that are included in the determination of liability limits, on which Plaintiff's premium was based, it reaped an illegal windfall because Allstate received premium on insurable values for which it never intended to pay. Defendants breached the terms of the Policy.

32. Plaintiff submitted a valid claim for hail and windstorm damage within the policy period and Allstate breached the contract by denying or underpaying the claim. Plaintiff paid $28,391.07 for repairs to Ridecap Consulting and Allstate has any paid $13,382.67 in benefits.

33. As a result of Defendants' breach of the insurance contract, Plaintiff has incurred damages within the jurisdictional limits of this Court and will continue to incur damages until the entire claim is paid, including general contractors' overhead and profit.

### SECOND CAUSE OF ACTION
### UNFAIR OR DECEPTIVE ACTS OR TRADE PRATICES

34. Plaintiff incorporates herein by reference paragraphs 1 through 33.

35. During the underwriting and binding of coverage of Plaintiff's insurance policy, Allstate failed to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made and made a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact with respect to the coverage provided by the policy.

36. After Plaintiffs filed a claim, Defendant Clark made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be

issued: the terms of the policy or the benefits or advantages promised by the policy when she told Plaintiff that his policy does not cover general contractors' overhead and profit. This was also a misrepresentation of a material fact or policy provision relating to coverage at issue.

37. Together, Defendants misrepresented to Plaintiff the cause and extent of damage to the property. This was an untrue statement of material fact. Further, Allstate failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim with respect to which Allstate's liability had become reasonably clear by undervaluing the cost to repair the undisputed damaged property.

38. Further, when asked for an explanation, Allstate failed to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for Allstate's denial of the claim.

39. Finally, Allstate refused to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim. As a result of the aforementioned conduct, Plaintiff has incurred damages within the jurisdictional limits of this Court.

### THIRD CAUSE OF ACTION
### BREACH OF COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

40. Plaintiff incorporates herein by reference paragraphs 1 through 39.

41. Under Texas law accompanying every contract is a common law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a *tort* as well as a breach of contract. This duty of good faith and fair dealing arises out of the special trust relationship between the insured and the insurer.

42. The duty of good faith and fair dealing is thus imposed on the insurer because of the disparity of bargaining power and the exclusive control that the insurer exercises over the processing of claims. A breach of the duty of good faith and fair dealing is established when: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy

and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim.

43. Here, there was no reasonable basis for denying full benefits for the roof claim.

44. Allstate orchestrated the investigation in a manner calculated to construct a pretextual basis for denial or underpayment of Plaintiff's claim.

45. A reasonable insurer under similar circumstances would not have delayed or denied Plaintiff's claim. Based on the foregoing facts, Allstate actually knew or should have known there was no reasonable basis to delay payment.

## FOURTH CAUSE OF ACTION
## BREACH OF THE PROMPT PAYMENT OF CLAIMS ACT

46. Plaintiff incorporates herein by reference paragraphs 1 through 45.

47. Allstate failed to notify Plaintiff in writing of the acceptance or rejection of his claim, including the reasons for the rejection.[3]

48. Allstate did not provide a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for Allstate's denial of Plaintiff's claim and failed within a reasonable time to affirm or deny coverage of Plaintiff's claim in violation of the Texas Insurance Code.

49. Plaintiff paid $28,391.07 for repairs to Ridecap Consulting and Allstate only paid $13,382.67 in benefits. $10,873.40 is owed plus 10% penalty interest per annum on the amount unreasonably withheld, together with reasonable attorney's fees.[4]

50. The attorney's fees shall be taxed as part of the costs in the case.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS OR IMPLIED WARRANTY

51. Plaintiff incorporates herein by reference paragraphs 1 through 50.

52. Over several years Allstate sold insurance products and services to Plaintiff.

---

[3] TEX. INS. CODE §542.056
[4] TEX. INS. CODE §542.060.
Plaintiff's Original Petition - Page 8 of 11

53. Allstate made the following express or implied warranties with respect to its products or services: that hail and windstorm claims will be paid in full minus the deductible and that claims will be processed promptly.

54. Plaintiff relied on Allstate's representations and they became part of the basis of the bargain. Allstate breached the warranty because the products or services failed to provide results as advertised.

## SIXTH CAUSE OF ACTION
## FRAUD

55. Plaintiff incorporates herein by reference paragraphs 1 through 54.

56. Allstate systematically denies hail damage claims at the initial valuation stage and offers this low amount knowing that the initial valuations are inaccurate, unreliable, and biased toward generating estimates well below the actual cash value or replacement cost and anticipating that claimants will not bother disputing the low offer. This is a scheme of epic proportions.

57. Allstate duped Plaintiff into purchasing its policy but failed to disclose that it will never pay claims absent a lawsuit. This was a material fact and Allstate held exclusive knowledge of this fact and remained deliberately silent and failed to disclose the facts with the intent to induce Plaintiff into a transaction he would not have entered into had the information been disclosed.

58. Plaintiff was injured as a result of Allstate's fraudulent concealment because he incurred the expense of a general contractor and expected to be reimbursed.

59. The liability limits of Plaintiff's policy and the premium paid were determined on the basis of the replacement cost of Plaintiff's property. The value of contractor's overhead and profit, as well as sales tax on building materials, were included in the limit of liability for which Plaintiff has paid his premium.

60. When Allstate, in determining actual cash value, excluded costs that were included in the determination of liability limits, on which Plaintiff's premium was based, Allstate reaped an illegal windfall because it received premium on insurable values for which it never intended to

pay at the time the policy was sold. Allstate charges consumers the value of contractor's overhead and profit in its premiums yet Allstate never intends to pay in the event of a loss.

## ATTORNEY'S FEES

61. Plaintiff seeks recovery of his reasonable attorney's fees and costs against Defendants in accordance with §38.001 *et seq.* of the Texas Civil Practice and Remedies Code, and §541 *et seq.* and §542 *et seq.* of the Texas Insurance Code.

## REQUESTS FOR DISCLOSURE

62. Under Texas Rule of Civil Procedure 194, Defendants are requested to disclose, within 50 days of service of this request, the information or material described in Texas Rule of Civil Procedure 194.2.

## CONDITIONS PRECEDENT

63. All conditions precedent to Plaintiff's right of recovery of all causes of action pleaded herein have been performed, have occurred, or been excused.

## JURY DEMAND

64. Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon trial by jury hereof, said Plaintiff recover judgment for actual damages and punitive against Defendants, including penalty interest thereon; that upon a finding that Allstate or its agents acted knowingly Plaintiff be entitled to recover from Allstate and its agents additional damages in an amount of up to three times his actual damages; that Plaintiff be awarded reasonable attorney's fees and expenses incurred in obtaining judgment against Defendants and any appeals of this case; and that Plaintiff be granted all further relief, either at law or in equity, including punitive or exemplary damages, to which he may show himself justly entitled.

Respectfully submitted,


CLIFFORD K. NKEYASEN, PLLC
ATTORNEYS & COUN.    L.

4310 N. Central Expy, Suite 103
Dallas, TX 75206
Tel: (469) 249-9271
Fax: (469) 249-9113
clifford@coveragedenied.com

By: __/s/ Clifford Nkeyasen__
Clifford K. Nkeyasen
Texas Bar No: 24044876

**ATTORNEYS FOR PLAINTIFF**